UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JORGE SIERRA, | ) |
|         Petitioner, | ) ) ) |
| vs. | ) )   Case No. 3:24-cv-02473-GCS |
| ACTING WARDEN, FCI-MARION, | ) ) ) |
|         Respondent. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

On November 12, 2024, Petitioner Jorge Sierra, a federal prisoner currently incarcerated at FCI-Marion ("FCI-Marion"), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 to challenge prison disciplinary proceedings that resulted in the loss of 12 days statutory good credit time ("GCT") when he was housed in Sheridan FCI. (Doc. 1). Sierra maintains that he was justified in refusing to change his program assignment as there was a verified threat to him. Respondent opposes the petition. (Doc. 10). Based on the reasons delineated below, the Court finds that Sierra's § 2241 petition lacks merit and denies the petition.

### FACTS

During the relevant time alleged in the petition, Sierra was housed in Sheridan FCI in the Special Housing Unit, Cell 105. (Doc. 10-2, p. 2). On September 25, 2023, Sierra was

charged with violating Offense Code 306, "Refusing Work/PGM Assignment."(Doc. 10-2, p. 2). Specifically, the description of the incident states:

> On September 25th, 2023, at approximately 7:30 P.M I gave a direct order to Inmate Sierra, Jorge Reg. No 40737-509 housed in cell 105, to return to the yard. Inmate refused my directive stating he wasn't going back to the yard.

*Id*. That same day Lieutenant D. Ilten delivered the incident report to Sierra and advised Sierra of his right to remain silent. *Id*. at p. 2-4. The incident report states that he was read the incident report, that he chose not to make a statement, and that he displayed "a fair but uncooperative attitude during this investigation." *Id*. at p. 4. The incident report indicates that Sierra did not request staff witnesses. Based on Lieutenant D. Ilten's investigation, he determined that the incident report was accurate and the charge to be valid. *Id*. Thus, Lieutenant Ilten referred the matter to the Unit Discipline Committee ("UDC") for further action. *Id*.

On October 1, 2023, Sierra was advised of his rights regarding the hearing before the Disciplinary Hearing Officer ("DHO"). Sierra signed and dated this form. He further signed and dated a form indicating that he did not wish to have a staff representative and that he did not wish to call witnesses. (Doc. 10-2, p. 5, 6). Thus, the DHO hearing was held on October 4, 2023, wherein Sierra was read his rights. Sierra stated he understood his rights, submitted a written statement, and admitted to the charge stating: "I admit it." *Id*. at p. 13-15. Sierra was found guilty of BOP prohibited act 306, Refusing to work or accept a program assignment. *Id*. at p. 14. The DHO sanctioned Sierra to disallowance of

14 days of GCT, loss of commissary privileges for 45 days, and loss of visiting privileges for 45 days. *Id.* at p. 15. The DHO report was issued on October 27, 2023, and Sierra received it on November 7, 2023. *Id.*

## LEGAL STANDARDS

In disciplinary hearings, prisoners have procedural due process rights, but these are not the same rights a prisoner has at trial. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prisoners have a right to:

> (1) [A]dvance written notice of the charges against them at least twenty-four hours before the hearing;
> (2) the opportunity to call witnesses and present documentary evidence in their defense when consistent with institutional safety and correctional goals;
> (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action; and
> [(4)] the opportunity to be heard before an impartial decision maker.

*Henderson v. U.S. Parole Commission*, 13 F.3d 1073, 1077 (7th Cir. 1994) (internal citations omitted). However, if a witness's testimony would be "irrelevant, redundant, or unnecessary[,]" a prisoner may be denied the right to call witnesses. *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). Additionally, inmates do not have a constitutional right to staff representation unless the inmate is illiterate, or the issues are sufficiently complex. *See Wolff v. McDonnell*, 418 U.S. 539 (1974). While not constitutionally mandated, inmates are provided a staff representative at a DHO hearing by BOP policy. *See* 28 C.F.R. § 541.8(d); P.S. 5270.09 CN-1, Chapter 5.

The findings of the discipline hearing officer must be supported by "some evidence in the record." *Superintendent, Massachusetts Correctional Institution, Walpole v.*

*Hill*, 472 U.S. 445, 454 (1985). A court will overturn the decision "if no reasonable adjudicator could have found [petitioner] guilty of the offense on the basis of the evidence presented." *Henderson*, 13 F.3d. at 1077.

When an inmate believes the BOP is computing his or her sentence incorrectly, the inmate may challenge the confinement by filing a § 2241 petition. *See, e.g.*, *United States v. Walker*, 917 F.3d 989, 994 (7th Cir. 2019) (noting inmate may challenge the computation of his sentence by a § 2241 petition after first seeking relief through the BOP's administrative procedures); *see also United States v. Koller*, 956 F.2d 1408, 1417 (7th Cir. 1992); *Carnine v. United States*, 974 F.2d 924, 927 (7th Cir. 1992); *United States v. Dawson*, No. 13-2117, 545 Fed. Appx. 539, 541-542 (7th Cir. Nov. 15, 2013). Section 2241 petitions are the proper method for prisoners to challenge the loss of GCT because of a disciplinary hearing. *See Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983).

However, a petitioner must exhaust his administrative remedies before filing a Section 2241 petition. This is a common-law exhaustion requirement, not a statutory one. *See Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). The Court may require exhaustion before it entertains a § 2241 petition. *See, e.g.*, *Sanchez v. Miller*, 792 F.2d 694, 699 (7th Cir. 1986) (holding that "a federal prisoner challenging a disciplinary decision within the federal institution must exhaust his administrative remedies before seeking federal habeas relief"); *United States v. Koller*, 956 F.2d 1408, 1417 (7th Cir. 1992) (same with respect to sentence computation).

### DISCUSSION

Respondent concedes that Sierra exhausted his administrative remedies before filing suit. Thus, the Court turns to examine Sierra's petition on the merits.

Sierra claims he was justified in refusing the work assignment order because he had a verified threat to him. He presented a written statement regarding his justification during the DHO hearing and that a verified threat was found by Special Investigative Supervisor Captain J. Cerone. (Doc. 1, p. 6, 7).[1] The Court rejects this argument as he admitted his guilt regarding the charge, and the threat to his safety was not verified until November 13, 2023, after the DHO proceedings.

The evidence relied upon by the DHO was sufficient to establish his guilt. Sierra admitted that he refused to go to the yard, and the officer testified that he refused that

---

[1] On March 27, 2024, Captain Joseph Cerone declared, in another lawsuit filed by Sierra, the following:

6. Mr. Sierra was initially placed in the SHU for Protective Custody after he reported to staff he was concerned about his safety and security in the general population. As a result of this investigation, the Special Investigative Services Department, in accordance with BOP policy, completed a Threat Assessment Investigation. The investigation concluded that there was not enough information to verify a threat to Mr. Sierra's safety and recommended his return to General Population.
7. In accordance with BOP policy, after the Threat Assessment was completed and the threat was unable to be validated, Mr. Sierra was "ordered" out of SHU on three occasions. Mr. Sierra failed to comply with these orders and elected to remain in the SHU.
8. In response to Mr. Sierra's failure to return to the General Population, FCI Sheridan submitted a request to the Destination and Sentencing Computation Center ("DSCC") to transfer Sierra to a different facility. This request was denied.
9. On November 13, 2023, the Special Investigative Services Department re-opened the case and conducted a new Threat Assessment where they were able to verify a threat and re-submit a request for Mr. Sierra's transfer.

(Doc. 10-4, p. 2, 3).

order. This evidence is sufficient to establish the "some evidence standard" set forth in *Hill*.

As to Sierra's remaining argument in his § 2241 petition, that he continued his programs and received certifications while receiving the incident report, Sierra did not raise this issue in the disciplinary/appeal process. Sierra admits this in his petition. (Doc. 1, p. 6-8). Thus, the Court finds that he waived this argument in his habeas petition as the DHO and the appeal process did not have the opportunity to address it. *See, e.g.*, *McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir. 1999) (noting that due process does not require "the consideration of evidence that could have been but was not presented at the hearing.").

The record reveals that Sierra was provided advance written notice of the charges against him before the hearing. Sierra had the opportunity to call witnesses and present documentary evidence in his defense. Sierra, in fact, provided a written statement. Sierra was provided a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Sierra had the opportunity to be heard before an impartial decision maker. Lastly, the DHO's finding against Sierra was supported by more than "some evidence" as explained above. Accordingly, Sierra was given sufficient due process during his DHO hearing.

CONCLUSION

Based on the foregoing, the Court **DENIES** Sierra's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same.

If petitioner wishes to appeal this decision, generally he must file a notice of appeal with this Court within 60 days of the entry of judgment. *See* FED. R. APP. PROC. 4(a)(1)(B). A motion under Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. *See* FED. R. APP. PROC. 4(a)(4). A Rule 59(e) motion must be filed no more than 28 days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from judgment, do not toll the deadline for an appeal.

If the petitioner files a motion for leave to appeal *in forma pauperis*, he must include in his motion a description of the issues he intends to present on appeal. *See* FED. R. APP. PROC. 24(a)(1)(C). If he appeals and is allowed to proceed *in forma pauperis*, he will be liable for a portion of the $605.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. PROC. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-726 (7th Cir. 2008). It is not necessary for the petitioner to obtain a certificate of appealability from the disposition of his § 2241 petition. *See Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

**IT IS SO ORDERED.**

**DATED: October 28, 2025.**

Digitally signed by Gilbert C Sison
Date: 2025.10.28 11:52:27 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**